# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **ADRIENNE CURRY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:09-cv-02441-AKK** |
| **ERIC SHINSEKI, Secretary,** | ) | |
| **United States Department of** | ) | |
| **Veterans Affairs, et al.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Adrienne Curry ("plaintiff"), brings this action against her employer, United States Department of Veterans Affairs ("defendant"), alleging disability-based discrimination and retaliation in violation of sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* ("Rehabilitation Act"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII").  Doc. 23. Plaintiff also charges defendant with violating the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*  Doc. 23.  Presently before the court is defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction,

or in the Alternative, for Summary Judgment, filed on March 31, 2011. Doc. 39.

The motion is fully briefed, docs. 42 and 45, and is ripe for consideration. For the

reasons set forth below, defendant's motion is due to be granted.

## I.  MOTION TO STRIKE

Before addressing the summary judgment motion, the court will first

address defendant's motion to strike plaintiff's response brief and several of her

evidentiary submissions. *See* Doc. 45 at ¶¶ 1-2. Defendant first attacks plaintiff's

brief on timeliness grounds. Although this court's briefing schedule set an April

22, 2011 deadline for plaintiff's opposition brief, *see* text order entered April 1,

2011, and plaintiff did not submit her brief until April 27, 2011, counsel for

plaintiff now asks, after the fact, for an enlargement of time, submitting that he

believed mistakenly that the court observed the April 22, 2011 Good Friday

holiday. Doc. 46. Defendant's second proposed basis on which to strike the brief

is that plaintiff submitted the declarations of two individuals she never disclosed

during discovery. *See* Doc. 44, exs. 2, 3 (Declarations of Yvonne D. Johnson and

Doris Blue). Further, defendant contends that these declarations proffer testimony

containing hearsay and unspecified time frames. The court will make an exception

to its submission schedule to ensure that it has all of plaintiff's arguments and

evidence in considering the summary judgment motion. To the extent it is

2

relevant, the court will consider the testimony presented in the declarations at this stage of the proceedings.  Accordingly, defendant's motion to strike, doc. 45, is DENIED, and plaintiff's motion for enlargement of time, doc. 46, is GRANTED.

## II.  PROCEDURAL HISTORY

On December 2, 2009, plaintiff filed a complaint in this court against defendant, the Secretary of the Department of Labor ("Secretary of Labor"), and the Office of Worker' Compensation Program ("OWCP"), alleging violations of the FECA, the ADA, the Rehabilitation Act, Title VII, and 42 U.S.C. § 1983.  Doc. 1; Doc. 23.[1]  Plaintiff seeks a declaratory judgment, a permanent injunction, and an award of back pay, front pay, lost benefits, other compensatory damages, punitive damages, costs, attorneys fees and other expenses.  Doc. 23, at pages 8-9.  The complaint specifies that she filed it within 90 days of the EEOC's issuance of the Notice of Right-To-Sue on her December 5, 2008 EEO Complaint (# 2001-0521-2008104676).  Doc. 23 ¶ 2.

On July 14, 2010, defendants filed a Partial Motion to Dismiss, or in the Alternative, for Partial Summary Judgment.  Doc. 17.  Plaintiff responded, doc. 24,

---

[1]After defendant answered, it came to the court's attention that plaintiff apparently served a different version of her complaint on defendant than the one she filed with this court.  As such, the court ordered plaintiff to file the version of the Complaint she served on defendant.  Doc. 22. The complaint that plaintiff subsequently filed, doc. 23, is referred to as the complaint for purposes of this motion.

and defendants replied, doc. 25, asserting for the first time that the Secretary of

Labor and the OWCP are not proper defendants in a Title VII suit.  On November

10, 2010, this court granted defendants' motion with respect to plaintiff's claims

pursuant to 42 U.S.C. § 1983 and for punitive damages, but denied defendants'

motion with respect to plaintiff's claims under the ADA and the Rehabilitation Act.

Doc. 30.  In the same order, the court ordered plaintiff to show cause as to why

defendants Secretary of Labor and OWCP should not be dismissed as improper

parties to the lawsuit pursuant to Title VII and the Rehabilitation Act.  Doc. 30.

When plaintiff failed to respond to the show cause order, on December 1, 2010,

this court dismissed Secretary of Labor and OWCP as defendants.[2]  Doc. 31.  The

case proceeded against defendant, and after discovery, defendant filed the instant

motion to dismiss, or in the alternative, for summary judgment.  Doc. 39.

### III.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper

"if the pleadings, the discovery and disclosure materials on file, and any affidavits

---

[2]As such, each of the claims in plaintiff's complaint directed specifically against the OWCP are hereby DISMISSED.  These are plaintiff's claims in Count I for denial of reimbursement against the OWCP and denial of job placement services against the OWCP; the claims in Count II for failure to grant reasonable accommodations against the OWCP; the claims in Count III for retaliation against the OWCP; the claims in Count IV for harassment against the OWCP; and the claims in Count VII [sic] for civil conspiracy against the OWCP.

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (quotation marks and citation omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Id*. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

# IV.  BACKGROUND

## A.    Statutory Background on the Federal Employees' Compensation Act

The FECA is the workers' compensation law for federal employees.  A brief outlining of the steps involved in the recovery of workers' compensation benefits under the FECA will aid in understanding the underlying facts of this case and the legal issues raised.

Enacted in 1916, the FECA establishes a comprehensive and exclusive statutory scheme under which federal employees or their survivors receive benefits, regardless of fault, for employment-related injuries or deaths.  5 U.S.C. § 8102(a). Among other things, the act and its corresponding regulations delineate the rules for filing, processing and paying claims for workers' compensation benefits.  *See* 20 C.F.R. § 10.0.  The FECA provides that the Secretary of Labor has the sole authority to administer the payment of benefits, adjudicate claims, and decide all questions under the act, as well as promulgate the regulations necessary for the administration and enforcement of the act.  5 U.S.C. § 8124(a), 8145, 8149.  The Secretary of Labor has delegated this authority to the Director of the OWCP, who is responsible for the administration and implementation of the act.  20 C.F.R. § 10.1.  Because the FECA provides the exclusive remedy for a federal employee seeking compensation from the United States for work-related injuries, *see* 5

U.S.C. § 8116(c), judicial review of the Secretary of Labor's decisions on questions under the act is expressly foreclosed by statute.  5 U.S.C. § 8128(b).

Under the FECA, compensation for employment-related injuries depends on whether the resulting disability is deemed total or partial by the OWCP.  5 U.S.C. §§ 8105, 8106.  In the event of a total disability, the employee is entitled to receive monthly monetary compensation equal to 66 2/3 percent of her monthly pay.  5 U.S.C. § 8105(a).  If the employee is partially disabled, she is entitled to 66 2/3 percent of the difference between her monthly pay and her monthly wage-earning capacity after the beginning of her partial disability.  5 U.S.C. § 8106(b).

The FECA's goal is to return an injured worker to suitable work as soon as she is medically able.  20 C.F.R. § 10.500(b).  As such, once the OWCP decides, based on a medical evaluation from an employee's physician, that she is only partially disabled, meaning she is able to perform some work but not return to the position held at the date of the injury, the OWCP may work with the employee in finding suitable work, a process called "vocational rehabilitation."  5 U.S.C. § 8104; 20 C.F.R. § 10.518.  Additionally, the employing agency has a duty under the act to make reasonable accommodations to an employee's former job or offer a reasonable equivalent position to allow the employee to resume her employment with the agency.  5 U.S.C. § 8151(b); 20 C.F.R. § 10.507.

7

An employee who refuses to seek suitable work or refuses to work after her agency offers her suitable work is no longer entitled to workers' compensation benefits, unless she can show just cause for her refusal. 5 U.S.C. § 8106(c). In the event an employee refuses a job offer from her agency, the OWCP determines if the agency's accommodations are sufficient to characterize the job offer as "suitable work," as used in 5 U.S.C. § 8106(c). 20 C.F.R. § 10.500. In making this determination, the OWCP reviews the employee's physical limitations including all medical evidence concerning her injury, the job offered by the agency as a reasonable accommodation of the employee's partial disability, and the employee's qualifications to perform that job. *See* 20 C.F.R. §§ 10.500, 10.618. If the modified position is deemed suitable by the OWCP and the injured employee accepts this position, she can continue to receive compensation benefits for a percentage of the difference between her old salary and that received in the modified position, as noted above. *See* 5 U.S.C. § 8106(b) (providing for payments for partial disability).

### B.    Factual Background[3]

Defendant hired plaintiff in 1985 at its Veterans Administration Medical

Center in Birmingham, Alabama as a Program Support Clerk, or typist.  Doc. 23,

complaint ¶ 8; Doc. 43, plaintiff dec. ¶ 1; Doc. 41-2, at 9.  After a series of

incidents at work, in June 1996, plaintiff filed a workers' compensation claim

pursuant to the FECA for an occupational disease.  Doc. 41-1, Encalade dec. ¶ 6;

Doc. 41-2, at 10.  In May 1997, the OWCP accepted her workers' compensation

claim for the condition of prolonged depressive reaction, doc. 41-2, at 13, and she

began receiving payments for total disability a month later.  Doc. 41-2, at 15.  As

such, plaintiff left work, and did not resume working with defendant again until

thirteen years later in 2010.  Doc. 41-1, Encalade dec. ¶ 7.

In 1998, pursuant to her physician's recommendation, the OWCP notified

defendant that plaintiff could return to work with some restrictions.  Doc. 41-2, at

16.  Consequently, in October 1998 and again in April 1999, defendant sent

plaintiff a written job offer as a Program Support Clerk.  Doc. 41-2, at 16-17.

According to defendant, plaintiff never accepted or rejected the job offer by the

---

[3]The facts, from the sworn statements of the parties and witnesses as well as from other evidence submitted by the parties, particularly documents contained in the workers' compensation and Equal Employment Opportunity ("EEO") files that defendant maintained with regard to plaintiff, are presented in the light most favorable to plaintiff.  *See generally*, Docs. 41-1 through 41-15, Exhibit 1 to Declaration of T. Encalade (workers' compensation files) and docs. 41-16 to 41-19, Exhibit 2 to Declaration of T. Encalade (EEO files).

May 13, 1999 deadline.  Doc. 41-1, Encalade dec. ¶ 3; Doc. 41-6, at 34.

Consequently, later that year, the OWCP terminated plaintiff's compensation for

refusing a job offer for suitable work.  Doc. 41-21, ex. 5 to Murdoch dep., Doc. 41-

2, at 26, Doc. 41-6, at 55.  Plaintiff appealed to the Employees' Compensation

Appeals Board ("ECAB"), arguing that she received insufficient notice of the

termination.  Doc. 41-2, at 26; Doc. 41-6, at 55.  The ECAB reversed the

termination decision and reinstated her compensation for total disability benefits in

2002.  Doc. 43, plaintiff aff. ¶ 8; Doc. 41-2, at 26; Doc. 41-6, at 55.

In 2002, despite being out of work on total disability, plaintiff enrolled in

Wallace State Community College in Hanceville, Alabama, where she obtained an

Associates Degree in 2004.  Doc. 43, plaintiff aff. ¶ 5.  She then enrolled in the

nursing program at Samford University in Birmingham, Alabama, obtaining a

Bachelors Degree in Nursing in the spring of 2005.  *Id.* at ¶ 6.  In 2008, plaintiff

completed a Masters Degree in Nursing at Samford.  *Id.*

During this time, the OWCP continued to authorize psychiatric evaluations

of plaintiff in an attempt to determine if she had fully or partially recovered from

her disability.  In 2003, a physician found plaintiff unemployable, diagnosing her

as "psychotic."  Doc. 41-21, at 194-98.  In 2004, OWCP psychiatrist Dr. Paul

Fredette provided a second opinion, also diagnosing plaintiff as unable to work due

to anxiety and inability to perform complex tasks, among other things.  Doc. 41-21, at 202-07.  Plaintiff apparently contacted the OWCP in 2004 about returning to work for defendant, but the OWCP responded that due to Dr. Fredette's report, she did not meet the requirements for vocational rehabilitation assistance at that time. Doc. 43, plaintiff aff. ¶ 6 & ex. B.

At some point defendant apparently learned aware that plaintiff was attending nursing school, and, in June 2005, confirmed that plaintiff had obtained a license to practice nursing in July 2004.  Doc. 41-6, at 5.  On June 10, 2005, defendant wrote to the OWCP, asking it to review plaintiff's compensation benefits, given plaintiff's ability to attend nursing school while presumably having no capacity to work.  Doc. 41-21, at 238, ex. 15 to Murdock dep.  In August 2005, defendant hired a private investigator to conduct surveillance on plaintiff because it believed plaintiff attending and completing nursing college was inconsistent with her claims of total disability due to chronic depression.  Doc. 41-1, Encalade dec. ¶ 10; Doc. 41-21, Murdock dep., at 130-33, 145-55; Doc. 41-5, at 54-56.  The investigator's August 16, 2005, report indicated that defendant conducted the surveillance over the course of three days, from August 8 to 10, 2005,[4] and

---

[4] Plaintiff alleges that she noticed someone conducting surveillance on her on August 8, 9 and 10, 2005, and that the surveillance continued thereafter.  Doc. 23, complaint ¶ 51.

observed plaintiff in and around her apartment complex and driving to and from

Wal-Mart.  Doc. 41-6,  at 1-4.  The report confirmed that plaintiff had completed a

bachelor's degree in nursing, had obtained admission into the masters program also

in nursing but had not yet registered for classes, and also indicated her induction

into an honor society, having obtained a 3.74 out of 4.0 grade point average, and

her participation with a group of other students in a Community Management

Poster Contest, submitting a poster titled "Managing Nurse Managers." *Id*.  As a

result of the investigation, defendant submitted a second request to the OWCP to

terminate plaintiff's compensation and for it to make a determination for possible

overpayment of benefits.  Doc. 41-5, at 54-56.  In the request, defendant opined

that plaintiff certainly had wage earning capacity given her pursuit of a nursing

degree and working with other students on group projects, and that she likely had

not reported her school enrollment to Dr. Fredette during her 2004 psychiatric

evaluation.  *Id.*

In response to defendant's requests, the OWCP notified defendant that it

would schedule a second opinion medical evaluation to determine plaintiff's

continued entitlement to workers' compensation benefits.  Doc. 41-5, at 19.  In

October 2005, the OWCP scheduled plaintiff an appointment with Dr. Stewart

Waddell, doc. 41-5, at 16-18, and he reported in November 2005 that plaintiff

could return to work on a part-time basis beginning with three to four hours per day with a gradual increase over one to two months to an eight hour work day. Doc. 43, plaintiff aff. ¶ 17, Doc. 41-21, at 208-16, ex. 8 to Murdoch dep. He opined that plaintiff could work as a nurse since she was pursuing a masters degree, but that she could also work as a clerk/typist. Doc. 41-21, at 208-16, ex. 8 to Murdoch dep.

On March 8, 2006, the OWCP referred plaintiff for vocational rehabilitation services, based on Dr. Waddell's opinion and the fact that she had obtained a nursing degree. Doc. 41-5, at 20-23. On May 18, 2006, the OWCP notified plaintiff that a position as a Registered Nurse was suitable for her restrictions, that there were such positions available, that the OWCP would aid her for 90 days in finding such a position, but that at the end of the 90 days, regardless of whether she was actually employed, it would likely reduce her compensation based on the salary of a suitable nursing position. Doc. 41-5, at 11, 13, 34-53. For reasons unclear from the record, plaintiff apparently made no contacts on the job leads the vocational rehabilitation counselor gave her during the relevant time period. Doc. 41-4, at 20.

In September 2006 the OWCP sent plaintiff a letter proposing to reduce her compensation for wage loss based on evidence that she was no longer totally disabled, that she had the capacity to earn wages as a registered nurse, and that the

13

OWCP had engaged in a 90 day effort to place her in a position as a nurse.  Doc.

41-5, at 7-12.  As a part of this proposal to reduce her compensation, the OWCP

notified plaintiff as follows:

> Your agency wrote to this office in a letter dated August
> 23, 2005, and provided specific documentation that you
> attended college on your own at Samford University.
> Their research revealed that while attending Samford
> University you earned a bachelor's degree in Nursing in
> August 2005.  The Alabama Board of Nursing confirmed
> your original nursing license date of July 27, 2004.

Doc. 41-5, at 11.  In October 2006, the OWCP terminated plaintiff's compensation

for wage loss to zero.  Doc 41-5, at 2-6.  Plaintiff appealed the termination to the

ECAB on the basis that her vocational rehabilitation plan was inappropriate, and on

January 10, 2008, the ECAB reversed the termination decision, finding that the

OWCP should not have assigned a vocational rehabilitation counselor to assist

plaintiff in seeking full-time employment when her physician had found her

partially disabled for work and only able to work part-time.  Doc. 41-19, at 7-11,

34.  The ECAB thus reinstated plaintiff's compensation benefits for total disability

in January 2008.  Doc. 41-1, Encalade dec. ¶ 3; Doc. 42-4, at 22, Doc. 41-19, at 7-

11.

Apparently frustrated with the process of obtaining restoration of

employment with defendant through the OWCP process, but desiring to work for

defendant as a nurse, in September 2008, plaintiff attended a career fair, obtained

an application for a nursing position with defendant, and mailed it to the address

listed on the application, but heard nothing.  Doc. 23, complaint ¶ 26; Doc. 43,

plaintiff aff. ¶ 23.  During that same month, plaintiff contacted a lawyer regarding

the cessation and reinstatement of her workers' compensation benefits, her belief

that defendant was refusing to allow her to return to work, and the surveillance she

had noticed.  Doc. 43, plaintiff aff. ¶¶ 9, 22.  The lawyer informed plaintiff that the

surveillance was more than likely conducted by the OWCP or defendant.  Doc. 43,

plaintiff aff. ¶¶ 9, 22.

Thereafter, plaintiff contacted an EEO counselor on September 18, 2008,

asserting that defendant discriminated against her when it would not allow her to

return to work.[5]  Doc. 41-1, Encalade dec. ¶ 9.  After a period of informal

_____

[5]Under defendant's policies and the applicable Equal Employment Opportunity
Commission ("EEOC") regulations, an employee who believes her employer has mistreated her
must first approach a designated EEO counselor within the agency within forty-five days of the
alleged discriminatory conduct.  *See* 29 C.F.R. § 1614.105(a)(1)(2005).  EEO counselors are
authorized to attempt to settle grievances informally, and are required to advise the employee of
her rights and responsibilities in the EEO process, including her right to file a more formal
agency complaint with an EEO officer should the informal attempt fail.  *See* 29 C.F.R. §
1614.105(b).  The filing of a formal agency complaint triggers an investigation by the agency, *see*
C.F.R. § 1614.108(b), and upon the completion of the investigation, the employee has the right to
request a hearing and decision on her complaint from an EEOC administrative judge, who will
submit recommendations to the agency, or may request an immediate final decision from the
agency.  *See* 29 C.F.R. § 1614.108(f).  After a final written agency decision on the matter, the
employee may either appeal to the EEOC or file a civil action in the district court within a
particular time frame.  *See* 29 C.F.R. § 1614.407.

counseling, doc. 41-17, at 36, plaintiff filed a formal EEO complaint (# 2001-0521-20081044676) on December 5, 2008, alleging disability discrimination based on defendant's failure to allow her to return to work and retaliation for prior EEO activity based on the surveillance defendant conducted.  Doc. 23, complaint ¶ 41; Doc. 41-19, at 13.

After conducting an investigation, defendant issued a final agency decision, dated March 11, 2009, in which it framed plaintiff's discrimination and retaliation charges as follows:

> 1)    From 1996 to 9/15/08, and in October 2008, the complainant was not allowed to return to work and/or provided assistance regarding the procedure to do so and;
>
> 2)    From August 2005 and on-going, the VA hired a private investigator that follows the complainant everywhere.

Doc. 43, plaintiff aff. ¶ 11, Doc. 41-19, at 32-38.

The agency decision dismissed both of plaintiff's claims for failure to state a claim.  Doc. 41-19, at 32-38.  With regard to claim 1, defendant found that it lacked jurisdiction over the claim as it concerned plaintiff's desire to return to work while under the auspices of the Secretary of Labor and the OWCP.  *Id.*  More specifically, the decision noted the fact that plaintiff appealed the OWCP's decision to reduce

her compensation after it had assigned her a vocational rehabilitation counselor to work with her in seeking a nursing position, and that the ECAB reinstated plaintiff's compensation on appeal in January 2008.  *Id.*  As such, the opinion noted, the case was returned to the OWCP for compensation and management in January 2008, and thus defendant lacked the ability to make a meaningful employment offer to plaintiff at that point because doing so would assert a position contrary to OWCP guidelines.  *Id.*  With regard to claim 2, defendant found that plaintiff's EEO contact three years after the alleged discriminatory action was beyond the 45-day time period within which an individual may contact an EEO counselor with a claim of discrimination, citing 29 C.F.R. § 1614.105(a)(1), and noted that plaintiff knew of the forty-five day time limitation due to her filing three prior EEO complaints.  *Id.*  The decision further stated that the surveillance was an "isolated incident" that did not create a harm or loss to a term, condition or privilege of plaintiff's employment, and was thus not a retaliatory action.  *Id.*

On September 1, 2009, the EEOC affirmed the agency decision on appeal. Doc. 41-20, at 82-85.  The commission found that claim 1 failed to state a claim because there was no indication that plaintiff had attempted to obtain a position with defendant from 1996 to 2008.  *Id.*  As to claim 2, the commission agreed that it was time-barred.  *Id.*

17

While plaintiff's administrative complaint was being investigated and adjudicated by defendant and the EEOC, defendant began requesting that the OWCP authorize a new psychiatric evaluation of plaintiff because the last one on file was outdated.  Doc. 44, Encalade dep. at 13.  Defendant made numerous requests from October 2008 to April 2009.  Doc. 44, Encalade dep. at 13.  The OWCP authorized the evaluation in May 2009, and on May 13, 2009, Dr. Lyle Shehi reported to the OWCP that plaintiff could return to work, initially working four hour workdays with a gradual increase over time to eight hour workdays, but with indefinite psychiatric care needed.  Doc. 41-21, at 218-25, ex. 10 to Murdoch dep.  Dr. Shehi further opined, "I do not think she will work as a clerk.  I would request somehow trying to use her Master's Degree in nursing."  *Id.*  As such, on May 15, 2009, the OWCP released plaintiff to return to part-time employment with defendant.  Doc. 41-1, Encalade dec. ¶ 7; Doc. 43, plaintiff aff. ¶ 18.  In May and July 2009, plaintiff sent two additional applications for registered nurse positions to defendant, but heard nothing.  Doc. 41-1, Encalade dec. ¶ 11; Doc. 43, plaintiff aff. ¶¶ 17-19, 24.

On July 17, 2009, defendant wrote the OWCP notifying it that it had decided not to hire plaintiff as a nurse, stating:

> Based on the sensitivity of the medical evidence

18

> presented, in regards to Ms. Curry, the agency has come
> to the conclusion that suitable employment is not
> available for her.  The agency does not want to risk
> placing Ms. Curry in an environment that can cause her
> undue stress.  Therefore we're requesting that you
> continue your search in locating gainful employment for
> her, in the private sector, by utilizing all areas of expertise
> that she has.

Doc. 41-1, at 39; Doc. 41-16, at 38.

Plaintiff was apparently notified by the OWCP of defendant's decision not to

hire her on September 22, 2009.  Doc. 41-16, at 44-60.  On October 18, 2009,

plaintiff made a second contact with an EEO counselor, and on January 8, 2010,

filed a second EEO complaint (# 2001-0521-2010100238).  Doc. 41-16, at 44-60.

This complaint asserts claims of disability discrimination and retaliation for her

December 5, 2008 EEO complaint premised on plaintiff's allegation that she

learned on September 22, 2009 that defendant would not hire her as a part-time

nurse, despite Dr. Shehi's report stating that she could work as a nurse and despite

defendant advertising for nursing positions in newspapers.  Doc. 41-16, at 44-60.

Defendant has completed its administrative investigation into plaintiff's charges on

this complaint, issuing plaintiff a report on its investigation on June 24, 2010.  Doc.

41-16, at 44-60.  However, it appears that it has not issued a final agency decision.

Defendant has offered various reasons for not hiring plaintiff as a part-time

nurse, including that it did not have any part-time nursing positions available, doc. 44, Encalade dep. at 13, and that even though plaintiff is now a licensed nurse, she has no actual work experience as a nurse, as her most recent experience in the nursing area was as a student from 2001 to 2005.  Doc. 41-1, Encalade dec. ¶ 12. As such, defendant explains that it did not select plaintiff as a nurse because she was not the most qualified since the other applicants had actual work experience as a nurse or at least more recent student nursing working experience.  Doc. 41-1, Encalade dec. ¶ 12.  Plaintiff offers evidence indicating that defendant has hired nurses without prior experience who are not disabled and who have not engaged in prior EEO activity.  Doc. 41-23, McDuffie dep. at 33.

Although defendant did not re-employ plaintiff as a nurse, defendant has re-employed her since October 12, 2010, as a nursing assistant escort, which is equivalent to the clerk position that she had in 1996 before leaving work due to total disability.  Doc. 41-1, Encalade dec. ¶ 13.  Plaintiff currently works four hours per day, and defendant has stated that the goal is to return her to full time as her condition improves, as permitted by her physician.  *Id*.

## V.  ANALYSIS

The court turns now to the motion for summary judgment and the merits of plaintiff's claims.  The manner in which plaintiff has briefed the issues at the

20

summary judgment stage indicates that she is asserting three claims against defendant: 1) failure to hire her as a nurse as a violation of the FECA, 2) failure to hire her as a nurse as disability discrimination and failure to accommodate her disability in violation of the Rehabilitation Act, and 3) the surveillance of her as harassment in retaliation for prior protected activity in violation of Title VII and/or the Rehabilitation Act.[6]  In Section A, the court finds that it does not have jurisdiction to consider plaintiff's claim for a FECA violation because she is challenging defendant's restoration decision under the regulations issued by the Office of Personnel Management, which she must first appeal to the Merit Systems Protection Board.  In Section B, the court first considers the effect of the FECA's exclusive remedies provision on its ability to consider the merits of plaintiff's

_____

[6]Plaintiff's complaint originally directed more claims against defendant.  In addition to plaintiff's claim in Count I that defendant violated the Rehabilitation Act by refusing to hire her as a nurse, doc. 23 ¶¶ 26-27 ("In October, 2008, plaintiff sought to return to work in a position as a nurse.  Neither OWCP nor VA, has responded to plaintiff's application for employment, although several nurses positions became available at VA and else [sic]."), her claim in Count II that defendant failed to grant plaintiff reasonable accommodations for her disability by refusing to place her in a nursing position, doc. 23 ¶ 37, and her claim in Count IV that defendant conducted surveillance on her in August 2005 and ongoing as harassment to prevent her from pursuing re-employment, doc. 23 ¶ 54, plaintiff also asserted a claim in Count III that defendant refused to consider her for re-employment as a nurse in retaliation for prior protected EEO activity, doc. 23 ¶¶ 40-42, and a claim in Count VII [sic] that defendant conspired with the OWCP to harass her and deny her workers' compensation benefits and rehabilitation, doc. 23 ¶¶56-57.  Defendant argued for dismissal of each claim in its summary judgment brief.  As such, plaintiff has abandoned all claims other than the first three stated above by failing to argue them in her response brief.  *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (issues not argued are deemed abandoned).

Rehabilitation Act claims.  The court concludes that the FECA does not bar plaintiffs's claims, but nonetheless concludes that plaintiff's claims fail on their merits because plaintiff has not made out a *prima facie* case of disability discrimination.  In Section C, the court finds that plaintiff's retaliatory harassment claim is barred by her failure to exhaust her administrative remedies, but in the alternative, the claim fails on the merits due to plaintiff's failure to make out a *prima facie* case or to show that the surveillance actually amounted to harassment.

### A.    Plaintiff's FECA Violation Claim

Plaintiff contends that defendant violated section 8151(b)(2) of the FECA on July 17, 2009, when it decided not to restore her to employment in a nursing position, despite the fact that both Dr. Waddell and Dr. Shehi recommended that she could work as a nurse.  Section 8151(b)(2), titled "Civil service retention rights," sets forth a federal agency's obligation to restore an employee to his or her last position, or an equivalent one, following recovery from a compensable injury, providing in part:

> (b) Under regulations issued by the Office of Personnel Management -
> . . .
> (2) the department or agency which was the last employer shall, if the injury or disability is overcome within a period of more than one year after the date of the commencement of compensation, make all reasonable

> efforts to place, and accord priority in placing, the
> employee in his former or equivalent position with such
> department or agency, or within any other department or
> agency.

5 U.S.C. § 8151(b)(2).  Plaintiff presumably acknowledges that under this section,

because she did not recover within a year of her injury, defendant merely had to

make all reasonable efforts to place her in *her former or an equivalent position*.

Indeed, under the corresponding regulations issued by the Office of Personnel

Management as referenced in section 8151(b), which govern the actions of federal

agencies, defendant's responsibilities with regard to the restoration rights of a

partially recovered injured worker such as plaintiff are as follows:

> Agencies must make every effort to restore in the local
> community area, according to the circumstances in each
> case, an individual who has partially recovered from a
> compensable injury and who is able to return to limited
> duty.  At a minimum, this would mean treating these
> employees substantially the same as other handicapped
> individuals under the Rehabilitation Act of 1973, as
> amended. . . . If the individual fully recovers, he or she is
> entitled to be considered for the position held at the time
> of injury, or an equivalent one.  A partially recovered
> employee is expected to seek re-employment as soon as
> he or she is able.

5 C.F.R. § 353.301.  As such, federal law only allows rehiring, even when an

employee is fully recovered from her injury, at the same position or the equivalent

that the employee occupied before becoming injured, i.e., in plaintiff's case, a clerk

23

position.  Nonetheless, plaintiff contends that the spirit of the regulations require defendant to place her in a position that she "qualifies for and is interested in," in her case, a nursing position, and what's more, to prioritize her application above all others in placing her in such a position.  However, the provisions plaintiff relies on for this proposition, which address the prioritization of returning workers over other applicants or employees, only apply to returning workers who have *fully* recovered after more than one year after the date of injury and who have thus received notice from the OWCP that their workers' compensation benefits have completely ceased.  *See* 5 C.F.R. § 330.201(b); 5 C.F.R. § 330.203(b)(3)-(4).  Here, there is no evidence that the OWCP has found plaintiff to have fully recovered; rather, she remains designated as partially disabled, she is still receiving benefits for partial disability, and defendant has employed her in a limited duty capacity in a position equivalent to the one she had before leaving work in 1996, which is more than the FECA and the corresponding regulations require defendant to do for a partially disabled employee.

Defendant does not respond to the merits of plaintiff's FECA violation argument, instead merely asserting that to the extent plaintiff is challenging the Secretary of Labor's OWCP decisions with regard to the processing of her workers' compensation claim, such claims are not properly before the court.

Indeed, the provision of the FECA that forecloses judicial review of the Secretary of Labor's OWCP decisions on questions under the act is titled "Review of Award" and provides:

> (a) The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application.  The Secretary, in accordance with the facts found on review, may -
>
>> (1) end, decrease, or increase the compensation previously awarded; or
>>
>> (2) award compensation previously refused or discontinued.
>
> (b) The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
>
>> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>>
>> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128.[7]  *See also Southwest Marine v. Gizoni*, 502 U.S. 81, 90 (1991)

---

[7]The OWCP is a designee of the Secretary of Labor for purposes of section 8128(b)(2), and as such, the finality accorded to decisions of the Secretary of Labor applies equally to the findings of the OWCP as an office within the Department of Labor.  *See* 5 U.S.C. § 8145 (providing that the Secretary of Labor may "appoint employees to administer this subchapter; and delegate to any employee of the Department of Labor any of the powers conferred on him by this subchapter").  *See also* 20 C.F.R. §10.1 (appointing the OWCP to administer the FECA).

(noting that "FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determination of FECA coverage") (citation omitted).

However, plaintiff is not challenging a compensation decision made by the Secretary of Labor's OWCP, but is instead challenging defendant's decision not to restore her to employment in a nursing position in July 2009. As such, defendant's argument that the Secretary of Labor's OWCP decisions are not subject to review by this court would only appear to bar plaintiff's FECA violation claim if, under the FECA and the corresponding regulations, defendant's decision not to restore plaintiff to employment in the kind of job plaintiff desires was required to be reviewed or approved by the Secretary of Labor or the OWCP. Yet, plaintiff emphasizes that defendant, and not the Secretary of Labor or the OWCP, is responsible for restoring her to an appropriate re-employment position under the FECA. Plaintiff does not elaborate on her reasoning, but appears to contend that despite the fact that the decisions the Secretary of Labor makes with respect to awarding or denying a payment are final and non-reviewable under section 8128 of the FECA, that non-reviewability does not encompass decisions made by the federal agencies regarding restoration assignments (or lack thereof) to injured employees.

26

Indeed, it appears that the FECA and corresponding regulations do not require that a federal agency's restoration decisions made in this context be reviewed by the OWCP such that the OWCP's decision on the matter would be final and non-reviewable.[8]  Instead, the regulations promulgated by the Office of Personnel Management set up a different administrative scheme under which an employee, like plaintiff, who brings a claim of improper restoration under section 8151(b)(2), may challenge an agency's restoration decision.  The regulations issued by the Office of Personnel Management expressly provide that when an injured employee feels that her employer has violated her restoration rights under section 1851(b)(2) and the corresponding regulations, the employee may appeal the alleged violation to the Merit Systems Protection Board ("MSPB").  5 C.F.R. § 353.304(d) (directing partially-disabled employees to appeal to the MSPB for a determination of whether the agency is acting arbitrarily or capriciously in denying restoration); 5 C.F.R. § 1201.3(a)(12) (granting the MSPB power to decide improper restoration

---

[8]There is a situation where the OWCP is required to review propriety of an agency's job offer, but it is not at issue here.  After an employee rejects an agency's limited duty job offer, the OWCP is responsible for determining the suitability of the job offer, taking into account the employee's limitations, and if it deems the job suitable, it notifies the employee that she should accept the job or show just cause for refusal.  Chapter 810, Federal Personnel Manual, § 8-4 (E). *See also* 5 U.S.C. § 8016(c)(2) and 20 C.F.R. § 10.500(b).  Several courts have noted that the OWCP's suitability determination is not subject to judicial review, *see Meester* and *Luellen*, *infra*.  Here, defendant never offered plaintiff a job as a nurse, so there was no job offer for plaintiff to reject, which would trigger the OWCP's suitability determination.

claims); 5 C.F.R. §1203.1(a) (stating that the MSPB is authorized to review the way in which an agency implements the Office of Personnel Management's regulations). *See also* 5 U.S.C.§ 7701(a) (providing that an employee may submit an appeal to the MSPB "from any action which is appealable to the board under any law, rule or regulation"); *and see generally* 5 U.S.C. §§ 7701-7702 (providing for the procedures the MSPB uses in deciding improper restoration claims). Further, decisions of the MSPB are reviewed only by the United States Court of Appeals for the Federal Circuit if the appeal does not also involve claims of unlawful discrimination.  5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9).  However, when an appeal to the MSPB involves claims of unlawful discrimination related to or stemming from the employment action that is subject to review by the MSPB, it is considered a "mixed" appeal and review lies solely in a district court.  5 U.S.C. § 7703(b)(1); 29 C.F.R. § 1614.302(a)(1).  These rules indicate that the FECA's exclusive remedies provision, prohibiting judicial review of the Secretary's compensation decisions under the FECA, does not apply to similarly bar judicial review of an agency's restoration decision, because the Office of Personnel Management's regulations provide that judicial review is available, albeit only in limited circumstances.

  These rules also indicate that this court need not reach a substantive decision

on whether defendant violated section 8151(b)(2) because plaintiff's claim under

section 1851 presents a claim of improper restoration, and the Office of Personnel

Management grants jurisdiction over that subject matter to the MSPB.  Here, there

is no indication in the record that plaintiff pursued her improper restoration claim

before the MSPB.  Accordingly, this court must dismiss her FECA violation claim

for lack of jurisdiction.[9]  Alternatively, to the extent the court is in error and does in

fact have jurisdiction, there is no FECA violation here because the applicable

regulations require that defendant reinstate plaintiff to her "former or equivalent

position."  5 U.S.C. § 8151(b)(2).  The nursing position plaintiff wants is simply

not equivalent to the clerk position she held.

### B.   Plaintiff's Rehabilitation Act Claims[10]

Plaintiff also claims that defendant's failure to hire her as a nurse is a

violation of the Rehabilitation Act, i.e., that defendant discriminated against her

---

[9]If an employee wishes to assert discrimination claims in addition to challenging an agency's restoration decision (a "mixed case"), she may elect to file an EEO complaint instead of an appeal to the MSPB.  29 C.F.R. § 1614.302(b).  And, the EEO complaint need not specifically contain the additional allegations that the MSPB has jurisdiction to address.  29 C.F.R. § 1614.302(a)(1).  Although plaintiff filed an EEO complaint on January 8, 2010 alleging discrimination related to the instant issue, there is no indication in the record that this EEO complaint is a mixed case complaint.

[10]Although plaintiff filed a claim also under the ADA, doc. 1 at 4, doc. 23 at 5, in her brief she focuses only on her Rehabilitation Act claim.  Doc. 42 at 14-17.  Therefore, Plaintiff has abandoned her ADA claims.  *See supra*, n.6.  However, even if plaintiff has not abandoned her ADA claims, they fail for the same reasons the court finds here her Rehabilitation Act claims fail.

based on her disability and failed to grant her reasonable accommodations for her

disability by refusing to employ her as a nurse, while it hired other non-disabled

individuals with similar nursing degrees and levels of nursing experience.[11]  The

Rehabilitation Act prohibits federal agencies from discriminating in employment

against individuals with a disability.  29 U.S.C. § 791; *Mullins v. Cromwell*, 228

F.3d 1305, 1313 (11th Cir. 2000).  Encompassed within the prohibition against

discrimination is the requirement that federal agencies make reasonable

---

[11]The court notes that for purposes of plaintiff's Rehabilitation Act claims, it will
consider events alleged not only in plaintiff's December 5, 2008 EEO complaint but also those
alleged in her January 8, 2010 EEO complaint, despite the fact that plaintiff has not amended her
judicial complaint to specifically include those subsequent acts.  While the Eleventh Circuit
requires a federal employee to pursue and exhaust administrative remedies within her own
agency before filing a judicial complaint of employment discrimination, *Griffin v. Carlin*, 755
F.2d 1516, 1522 (11th Cir. 1985), the exhaustion requirement is satisfied when the issues raised
in the judicial action were either expressly raised in the EEO complaint or are "reasonably
related" to those contained in the EEO complaint, as long as there are no "material differences"
between the two.  *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989).  Importantly, when the
allegations made in the judicial action involve conduct committed subsequent to the filing of the
EEO complaint, the conduct is still reasonably related to the charged conduct where: (1) the
subsequent conduct would fall within the reasonably expected scope of the agency investigation
of the administrative charges; (2) the claim alleges retaliation against the employee for filing an
EEO complaint; or (3) the plaintiff alleges "further incidents of discrimination carried out in
precisely the same manner alleged in the EEOC charge."  *Buzzi v. Gomez*, 62 F. Supp. 2d 1344,
1352 (S.D. Fla. 1999).  Here, defendant has investigated the charges comprising the January 8,
2010 complaint and has issued plaintiff a report of the investigation.  Under these circumstances,
plaintiff has sufficiently exhausted her administrative remedies with regard to her Rehabilitation
Act claims as bolstered by the events alleged in the second complaint.  *See Ray v. Freeman*, 626
F.2d 439, 422 (5th Cir. 1980) ("Discrete acts of discrimination which occur after the filing of an
EEO complaint must first be reviewed administratively before such acts may serve as the basis
for a finding of discriminatory conduct justifying remedial action by the court.").  *See also
Griffin v. Casey*, 1987 WL 8195, at *3 (M.D. Fla. Jan. 20, 1987) (the exhaustion requirement is
satisfied when the administrative agency considered the issues in the investigation).

accommodations to qualified individuals with disabilities, unless the

accommodation imposes an undue hardship on the employer.  *See* 38 C.F.R. §

18.412; 29 C.F.R. § 1614.203(c)(1); *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d

1220, 1237 (11th Cir. 2005).

> **1.     The effect of the FECA's exclusive remedies provision on
> plaintiff's Rehabilitation Act claims**

The court now turns to defendant's argument that the FECA's exclusive

remedies provision bars the court from considering the merits of plaintiff's

Rehabilitation Act claims.[12]  Although the Eleventh Circuit has not considered the

---

[12]It is actually unclear from defendant's summary judgment brief whether it is making this argument, because while it argues that the court lacks subject matter jurisdiction over the Secretary of Labor's OWCP decisions regarding the processing of plaintiff's workers' compensation claim, it only applies this argument to the specific claims plaintiff asserted against the OWCP in her complaint, *see* doc. 45 at 20-23, but meanwhile offers substantive arguments as to the merits of plaintiff's claims under the Rehabilitation Act and other anti-discrimination statutes, *see id.* at 9-20.  Of course, defendant may be arguing the merits of the Rehabilitation Act claims in the alternative.  Indeed, due to the absence of well-reasoned arguments by either party as to whether this court has subject matter jurisdiction over plaintiff's Rehabilitation Act claims, the court would prefer to assume, without deciding, that subject matter jurisdiction exists because the decision on the merits of plaintiff's Rehabilitation Act claim favors defendant in any event.  However, a federal court is obliged to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.  *Hernandez v. U.S. Att'y Gen.*, 513 F.3d 1336, 1339 (11th Cir. 2008).  *See also Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (subject matter jurisdiction may not be waived by the parties).  Further, the Supreme Court has held that a federal court may not, via the doctrine of "hypothetical jurisdiction," decide a cause of action on the merits before resolving whether the court has subject matter jurisdiction because doing so would "carr[y] the courts beyond the bounds of authorized judicial action and thus offend[] fundamental principles of separation of powers."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-94 (1998), abrogating *Smith v. Avino*, 91 F.3d 105, 108 (11th Cir. 1996) (holding that "it is permissible for the Court to bypass jurisdictional questions and decide the case on the merits when the jurisdictional issue is difficult, the law is not well-established, and a decision on the merits favors the party who raised the jurisdictional bar.").  As such, this

issue, several courts have held that to the extent a plaintiff is using the

Rehabilitation Act to obtain judicial review of a FECA decision or obtain benefits

under the FECA, the court is without subject matter jurisdiction to review such a

claim. *See, e.g., Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir. 1998) (holding

that a plaintiff may not allege disability discrimination under the Rehabilitation Act

to secure judicial review of the Secretary of Labor's FECA compensation

decision); *Luellen v. Henderson*, 54 F. Supp. 2d 775, 783 (W.D. Tenn. 1999)

("decisions concerning the suitability of federal agency job offers to partially

disabled employees have been exclusively committed to the Secretary of Labor

under the FECA and cannot be collaterally attacked or reviewed under the

Rehabilitation Act"); *Taylor v. Potter*, 124 F. App'x 293, 2005 WL 746617, at *1

(5th Cir. Apr. 1, 2005) (Table Decision, text in Westlaw) ("Taylor is also

prohibited from alleging disability discrimination in violation of the Rehabilitation

Act in order to secure judicial review of the Department of Labour's [sic]

determination.").  On the other hand, other courts have held that when a plaintiff

seeks to obtain separate relief available to her under the Rehabilitation Act's

disability discrimination prohibition, jurisdiction exists to entertain her claims.

---

court must consider whether the FECA's exclusive remedies provision deprives it of subject
matter jurisdiction to consider plaintiff's Rehabilitation Act claims.

*See, e.g., Morris v. Roche*, 182 F. Supp. 2d 1260, 1274 (M.D. Ga. 2002) (holding that "recovery of FECA benefits does not bar a subsequent claim for [disability] discrimination" and collecting cases to that effect).  Additionally, it is fairly well-established that the receipt of FECA benefits does not bar recovery for Title VII (non-disability) discrimination.  *See, e.g., Miller v. Bolger*, 802 F.2d 660, 663-64 (3d Cir. 1983) ("FECA was intended only to be a substitute for suits against the United States for tortious injury" and nowhere in legislative history "is there any mention of FECA recovery as precluding actions for discrimination")).

Here, plaintiff alleges that although her physician and the OWCP approved her to return to work on a modified schedule, defendant ignored her applications and ultimately denied her a position as a nurse.  Because plaintiff takes issue with what defendant *did not do*, rather than what it did, the court is of the opinion that this case differs in some crucial respects from *Meester*, *Luellen*, and the other cases holding that a Rehabilitation Act claim is barred by the FECA's exclusive remedies provision.  This is because in those cases, the Secretary of Labor through its OWCP made a specific determination that a particular job offered by the defendant-federal agency was suitable work for the employee and thus directed the employee to

accept the job or be denied benefits.[13]   As such, those courts held that the employee could not then ask a federal court to review the Secretary's decision on benefits under the guise of asserting a disability discrimination claim.   But here, plaintiff is not asking this court to review a decision made by the Secretary of Labor that a nursing position was or was not suitable work because defendant never offered her a nursing position.[14]   Instead, plaintiff claims that defendant's failure to offer her a nursing position, while it hired other non-disabled individuals, is an act of disability discrimination.

In light of these facts, the court finds the analysis in *Morris* more persuasive.

---

[13]In *Meester*, the plaintiff developed work-related injuries and received FECA benefits. 149 F.3d at 856.   Because the injuries did not render the plaintiff totally disabled, her employer, the United States Postal Service, offered to restore her to limited duty employment by proposing a position with two non-consecutive days off per week.   *Id.*   Despite the fact that plaintiff and her physician  asked for a position that afforded her two *consecutive* days off per week, the OWCP reviewed the proposed position and plaintiff's medical records, and concluded that the proposed position was fully consistent with plaintiff's physical limitations.   *Id.*   As such, the OWCP directed plaintiff to accept the position or lose her FECA benefits.   *Id.*   Plaintiff accepted the position but sued her employer for violating the Rehabilitation Act by treating her unfavorably based on her disability and failing to accommodate her disability.   *Id.*   The Eighth Circuit ultimately held that "a frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation in performing an alternative position approved by the Department of Labor when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision."   *Id.* at 857.   In so holding, the court noted that the Department of Labor is charged with determining whether an alternative position offered by a federal agency employer is "suitable work" under 5 U.S.C. § 8106(c), and thus found that the plaintiff was essentially asking the court to hold that the Department of Labor was wrong in directing her to accept the position or lose her benefits.   *Id.   Luellen* was decided on similar facts.

[14]As noted earlier, the OWCP does not make a suitability determination based on an agency's job offer until the employee rejects the job offer.

In that case, the plaintiff's employer, the Air Force, assigned him a limited duty post in order to accommodate him for his disability pursuant to the FECA, but when the Air Force rejected as unreasonable plaintiff's request for an assistant to help him complete his duties in that post, plaintiff brought claims of disability discrimination and failure to accommodate his disability.  182 F. Supp. 2d at 1266. The court distinguished *Meester* and *Luellen* by emphasizing that unlike the plaintiffs in those cases who challenged a decision of the Secretary of Labor regarding the benefits they received, the plaintiff was seeking "different relief under different statutes for a different injury."  *Id*. at 1273.  In determining that the FECA does not preclude a Rehabilitation Act claim for discrimination based on a disability that was caused by a work-related injury for which the employee recovered FECA benefits, the court analyzed the wording of the FECA as well as its legislative history, ultimately concluding that an award under an anti-discrimination statute is not covered by the FECA because discrimination falls outside the FECA's definition of "injury."  *Id*. at 1277.  The court emphasized:

> It is unthinkable that Congress intended to disallow federal employees who are unfortunate enough to have been injured on the job from availing themselves of the protections afforded by [anti-discrimination] statutes. Moreover, the Secretary of Labor's authority is not infringed by allowing a federal employee to maintain an action for disability discrimination under the

> Rehabilitation Act.  The Secretary has awarded Plaintiff a
> sum to compensate him for his work-related injury, and
> Plaintiff is not challenging that decision.  Instead,
> Plaintiff is seeking different relief under different statutes
> for a different injury.  Accordingly, FECA does not
> preclude Plaintiff's claim under § 501 of the
> Rehabilitation Act.

*Id.* at 1277-78.  As in *Morris*, here plaintiff does not challenge the benefits awarded

by the OWCP, but instead asserts that discriminatory animus motivated defendant's

actions.  As such, the specific factual circumstances presented by this case lead the

court to conclude that it is not barred by the FECA from considering the merits of

plaintiff's Rehabilitation Act claims.

> **2.      Plaintiff's Rehabilitation Act claims fail because she cannot
> establish a *prima facie* case of disability discrimination.**

The standard for determining liability under the Rehabilitation Act is the

same as that under the ADA; as such, cases involving the ADA are precedent for

those involving the Rehabilitation Act, and vice versa.  *See Ellis*, 432 F.3d at 1326;

*Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000); 29 U.S.C. § 794(d).

Moreover, the same burden-shifting framework set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802-03 (1973), that is used to analyze claims under

Title VII is also used in Rehabilitation Act cases.  *Tarmas v. Secretary of Navy*,

2011 WL 2636866, at *5 n.7 (11th Cir. July 6, 2011) (citing *Ellis*, 432 F.3d 1321 at

1326).  *See also Sutton v. Lader*, 185 F.3d 1203, 1207 n.5 (11th Cir. 1999).  Under

the *McDonnell Douglas* analysis, the plaintiff bears the burden of establishing a

*prima facie* case of disability discrimination.  *Pennington v. City of Huntsville*, 261

F.3d 1262, 1266 (11th Cir. 2001).  Once a plaintiff has established a *prima facie*

case, the employer then has an opportunity to articulate a legitimate, non-

discriminatory or non-retaliatory reason for the challenged employment action.  *Id.*

If the employer proffers such an explanation, the burden shifts back to the plaintiff

to prove by a preponderance of the evidence that the defendant's explanation is

merely a pretext.[15]  *Id.*  "To establish a prima facie case of discrimination under the

---

[15]Of course, this burden-shifting scheme applies only in cases where there is no direct evidence of discrimination.  *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987). Here, plaintiff contends that she has presented direct evidence of disability discrimination, when defendant informed the OWCP that it would not hire her as a nurse, as follows:

> Based on the sensitivity of the medical evidence presented, in regards to Ms. Curry, the agency has come to the conclusion that suitable employment is not available for her.  The agency does want to risk placing Ms. Curry in an environment that can cause her undue stress. Therefore we're requesting that you continue your search in locating gainful employment for her, in the private sector, by utilizing all areas of expertise that she has.

Doc. 41-1, Encalade dec., ex A. at p. 48 (Statement by Albert Ward, defendant's Supervisor of Employee Labor and Relations).  "Direct evidence is evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quotation marks and citations omitted). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence."  *Id.* Therefore, "direct evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor."  *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (quotation marks and citations omitted). Defendant's statement is not direct evidence of disability discrimination because it does not

37

[Rehabilitation] Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability." *Ellis*, 432 F.3d at 1326. *See also* 42 U.S.C. § 12112(a).

### i.    Plaintiff does not meet the definition of an individual with a disability.

Plaintiff's first hurdle in surviving summary judgment on her Rehabilitation Act claims is to show that she has as disability.  Under both the ADA and the regulations interpreting the Rehabilitation Act, an individual is "disabled" if she (1) has a physical or mental impairment that substantially limits one or more of her major life activities; (2) has a record of such impairment; or (3) is regarded by her employer as having such impairment.  *Cash*, 231 F.3d at 1305 (citing 42 U.S.C. § 12012(2); 34 C.F.R. § 104.3(j)(1)).[16]  Plaintiff contends that she can establish that

---

prove the existence of discrimination "without inference or presumption." *Wilson*, 376 F.3d at 1086.  At best, it *suggests* only a possible discriminatory motive.  Thus, this evidence, at most, is circumstantial and is thus considered within the *McDonnell Douglas* burden-shifting framework.

[16]In 2009, Congress passed amendments to the ADA, known as the ADAAA, which expanded coverage for disability discrimination.  42 U.S.C. § 12102.  Defendant asserts that because plaintiff's disability claims appear to arise in 2008 and prior years, they should be analyzed under the standards set forth by the ADA, rather than the ADAAA.  The Eleventh Circuit has never held that the ADAAA is retroactively applicable.  *Tarmas*, 2011 WL 2636866, at *6  n.9.  Other courts have concluded that the amendments are not retroactively applicable. *See Kemp v. Holder*, 613 F.3d 231 (5th Cir. 2010); *Becerril v. Pima County Assessor's Office*, 587 F.3d 1162 (9th Cir. 2009).  As plaintiff does not argue that her claims should be analyzed under the ADAAA rather than the ADA and, in fact, does not even address the ADA, the court

she is disabled both by showing that 1) she has a physical or mental impairment that substantially limits one or more of her major life activities and that 2) defendant regarded her as having such impairment.[17]

Proving that one has a disability under the first method involves a three-step analysis. *Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004). Plaintiff must first establish that she is mentally or physically impaired. *Id.* Second, she must then show that the impairment limits a "major life activity," which the regulations define as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Id.* (quoting 45 C.F.R. § 84.3(j)(2)(ii)). Third, plaintiff must establish that her impairment "substantially limits" the major life activity she has identified. *Id.* "Substantially limits" means "significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)).

Plaintiff faces essentially the same burden in proving that defendant regarded her as disabled. "[I]n order for a plaintiff to prevail on a perception theory of disability discrimination, he must be able to show that, as with a real impairment,

---

will analyze them under the standards set forth by the ADA and finds that her ADA claims fail for the same reason as her Rehabilitation Act claims.

[17]Plaintiff does not contend that she has a record of such impairment.

the perceived impairment is 'substantially limiting' and significant." *Sutton*, 185 F.3d 1208. "To show that she was perceived as disabled, [plaintiff] must produce 'substantial evidence' that her employer regarded her as having a permanent or long-term impairment." *Johnston v. Henderson*, 144 F. Supp. 2d 1341, 1352 (S.D. Fla. 2001).

Plaintiff asserts plainly that the fact that she was out of work and receiving OWCP compensation for total disability from the years 1996 through 2010, and is now only working part-time for defendant, is *prima facie* evidence that she is disabled. Further, asserts plaintiff, defendant regarded her as being substantially limited in her ability to perform the major life activity of working. These bald assertions do not come close to meeting plaintiff's burden. As an initial matter, the determination of whether an individual is disabled depends on the effect the impairment has on the particular individual's life, and not simply on the name or diagnosis of the impairment. 29 C.F.R. § 1630.2(j). In that regard, plaintiff offers no explanation or factual evidence as to how she was impaired by the fact that she was receiving workers' compensation benefits from the OWCP. Moreover, her reliance on her total disability status with the OWCP falls flat considering her physicians' diagnoses in 1998, 2005, and 2009 that she was able to perform part-time work and the OWCP's numerous attempts to work with her to regain

employment during the years 1996 to 2010.

Further, plaintiff has not offered any factual evidence that she is substantially limited in the major life activity of working or that defendant regarded her as such. The Eleventh Circuit has instructed that courts "must strictly interpret the terms 'major life activities' and 'substantially limits' so as 'to create a demanding standard for qualifying as disabled'" *Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1311 (11th Cir. 2007) (citation omitted). "Whether an impairment substantially limits a major life activity, is to be determined in light of: (1) the nature and severity of the impairment; (2) its duration or expected duration; and, (3) its permanent or long term impact, or its expected permanent or long-term impact." *Johnston*, 144 F. Supp. 2d at 1350 (citing 20 C.F.R. § 1630.2(j)(2)). "To be substantially limited in the major life activity of working, an individual must be precluded from more than one type of job, even if the job foreclosed is the individual's job of choice." *Cash*, 231 F.3d at 1306. *See also Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 912 (11th Cir. 1996) (an individual must show "significant restrictions in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities," and "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of

41

working") (quoting 29 C.F.R. 1630.2(j)(3)(I)); *Swain v. Hillsborough County School Bd.*, 146 F.3d 855, 858 (11th Cir. 1998) ("Although a plaintiff seeking recovery under the ADA, is not required to prove a comprehensive list of jobs which [she] cannot perform, the person must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment.").

Plaintiff has not presented any evidence to show that her total disability status with the OWCP has restricted her ability to perform a wide range of jobs. Rather, the entire record in this case indicates to the contrary.  While plaintiff was absent from work due her to total disability status, she attended nursing school, participated in group activities with other nursing students, and even completed a project that focused on managing nurses.  Moreover, the crux of plaintiff's entire disability discrimination claim is her contention that defendant refused to allow her to return to work despite her desire and ability to work.  In her affidavit, plaintiff emphasized that she requested to return to work in 2004, 2008, and 2009.  Doc. 43, plaintiff aff. ¶¶ 15, 24.  Indeed, she contacted a lawyer in September 2008 and subsequently based her December 5, 2008 EEO complaint on defendant's refusal to allow her to return to work.  Further, plaintiff has since returned to work in a limited duty capacity, working four hours a day with the goal of returning to eight

hours as her condition improves.  This evidence is also inconsistent with plaintiff's claim that she is substantially limited in the major activity of working.

As to her "regarded as" claim, plaintiff simply cannot use her receipt of workers' compensation benefits as proof that defendant regarded her as substantially limited in the major life activity of working.  "The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled."  *Sutton*, 185 F.3d at 1209.  In fact, there is overwhelming evidence in the record that defendant did <u>not</u> regard plaintiff as unable to work.  With authorization from the OWCP, defendant offered plaintiff a job as a Program Support Clerk in 1998 and 1999, to which plaintiff did not respond.  Later in 2005, when defendant learned that plaintiff was enrolled in nursing school, it twice asked the OWCP to review plaintiff's benefits because it felt she had wage earning capacity, even going so far as to authorize surveillance of plaintiff to demonstrate to the OWCP that she was able to return to work and should not be receiving compensation for total disability.  After the ECAB reinstated plaintiff's benefits for total disability in January 2008, defendant began asking the OWCP again for a psychiatric evaluation of plaintiff to determine if she could return to work.  Finally, defendant has re-employed plaintiff since October 2010.  This evidence belies Plaintiff's contention that defendant regarded her as

disabled.

As demonstrated by her conduct, arguments, and the record taken as a whole, plaintiff is not and could not reasonably be found by a rational trier of fact to be substantially limited in the major life activity of working. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial). In short, plaintiff has not presented a triable issue of fact on whether she was disabled and, accordingly, her Rehabilitation Act claims fail.

### ii. Because plaintiff is not disabled she is not entitled to reasonable accommodation.

Plaintiff contends also that defendant failed to grant her reasonable accommodations by refusing her a nursing position. Under both the Rehabilitation Act and the ADA, it is unlawful discrimination for an employer to fail to provide a reasonable accommodation to an otherwise qualified <u>disabled</u> individual, unless doing so would impose undue hardship on the employer. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a)) (emphasis added). "To fall within the protection of the Rehabilitation Act, plaintiff must first prove that at the time she requested the

accommodation, she had a disability as defined by the Act." *Johnston*, 144 F. Supp. 2d at 1353. *See also Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998) (plaintiff must first make prima facie case showing he is disabled before issue of reasonable accommodation can be considered). As stated by the court in *Johnston*, "[l]ogic and law dictate" that as this court has determined that plaintiff is not disabled within the meaning of the Rehabilitation Act, she cannot be entitled to reasonable accommodations. 144 F. Supp. 2d at 1353.

Even assuming for the sake of argument that plaintiff has established that she is disabled under the Rehabilitation Act, her failure to accommodate claim fails because she has not shown a reasonable and available accommodation. Under the ADA and the Rehabilitation Act, the plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows her to perform the job's essential functions. *Lucas*, 257 F.3d at 1255. The ADA lists examples of reasonable accommodations as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations for individuals with disabilities." *Id.* at 1256 (quoting 42 U.S.C. § 12111(9)(B) and citing 29 C.F.R. § 1630.2(o)(2)(ii)).

Plaintiff contends that she is entitled to a modified work schedule in a

45

nursing position—starting at four hours a day and gradually increasing to eight hours a day—as a reasonable accommodation for her disability.  However, the Eleventh Circuit has held numerous times that while the ADA, and for that matter the Rehabilitation Act, may require an employer to reassign or transfer the disabled employee to a vacant position as a reasonable accommodation, the reassignment duty does not require the employer to <u>promote</u> a disabled employee, *see, e.g., Lucas*, 257 F.3d at 1256, which is exactly what plaintiff seeks here, since she wanted defendant to promote her from the clerk position she held to a nursing position.  Likewise, the law does not require employers to <u>create</u> alternative positions for disabled employees.  *See Sutton*, 185 F.3d at 1211.  Here, defendant contends that it does not have part-time nurse positions, and plaintiff has not presented any evidence to refute this assertion.[18]  As such, plaintiff's failure to accommodate claim fails.

### C.    Plaintiff's Retaliatory Harassment Claim

Plaintiff's final claim is that defendant harassed her by conducting continuous surveillance on her since August 2005 in retaliation for prior EEO

---

[18]Instead, plaintiff splits hairs by arguing that she is seeking a full-time position with an accommodation whereby she would start with a modified part-time schedule of four-hour days that will gradually increase to eight-hour days.  Plaintiff's attempt to make a distinction between her proposal and part-time work misses the mark.

activity.[19]  Doc. 23, complaint ¶¶ 50-54.  To establish a *prima facie* case of

retaliation under Title VII a plaintiff must show that 1) she engaged in statutorily

protected expression; 2) she suffered an adverse employment action; and 3) there

was some causal relationship between the two events.  *Holifield v. Reno*, 115 F.3d

1555, 1566 (11th Cir. 1997).  The elements of a *prima facie* case of retaliation are

the same under the Rehabilitation Act and ADA.  *Stewart v. Happy Herman's*

*Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997); *see also Burgos v.*

*Napolitano*, 330 F.App'x. 187, 189 (11th Cir. 2009) (unpublished) ("[W]e assess

retaliation claims pursuant to the [Rehabilitation] Act under the same framework

used for Title VII retaliation claims."); *Albra v. City of Fort Lauderdale*, 232 F.

App'x 885, 891 (11th Cir. 2008) (unpublished) ("[T]he prima facie case for

retaliation under the Rehabilitation Act is the same as that under the ADA.").

Defendant's primary argument with regard to the allegations of surveillance

is that the claim is barred by plaintiff's failure to timely exhaust her administrative

remedies although alleging that defendant began conducting surveillance on her in

---

[19]The court notes that plaintiff's ability to bring her retaliation claim before this court is similarly not barred by the FECA's exclusive remedies provision.  Plaintiff is not trying to secure judicial review of a discrimination claim predicated on the same illness or injury that gave rise to a decision made by the Secretary of Labor's OWCP, but is claiming that her injury *followed* some form of prohibited discrimination, i.e., that she suffered injury as a result of defendant's retaliatory harassment.  As such, the FECA is not the sole remedy for plaintiff's alleged injury because the injury at stake is the result of prohibited discrimination, and not a FECA compensation decision.

August 2005, she waited until September 18, 2008, to initiate contact with an EEO counselor regarding this issue.  EEOC regulations require federal sector employees to bring complaints of discrimination within forty-five days of the alleged discriminatory conduct or personnel action.  29 C.F.R. § 1614.105(a)(1).  An employee who fails to do so suffers the dismissal of her complaint.  *Id*. at § 1614.107(a)(2).  Defendant asserts that plaintiff's September 18, 2008 EEO contact, being three years after the surveillance began, is thus clearly beyond the forty-five day limitation and any discrimination or retaliation claim premised on it is barred.

In response, plaintiff now claims that while she observed certain acts that she thought could be surveillance in August 2005, she did not connect it to defendant until she spoke with a lawyer in September 2008, and that she filed the EEO complaint three days later.  Doc. 43, plaintiff aff. ¶ 9.  As such, plaintiff effectively argues for equitable tolling, or that the forty-five day limitation period should not begin to run until when she first knew or should have known of the retaliatory conduct.  *See* 29 C.F.R. § 1614.105(a)(2) (an agency "shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that . . . he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred").  *See also Sturniolo v. Sheaffer, Eaton, Inc.*,

15 F.3d 1023, 1025 (11th Cir. 1994) (under the doctrine of equitable tolling, "a limitations period does not start to run until the facts which would support a charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights").

Plaintiff has the burden of proving that she is entitled to equitable tolling. *Carter v. West Publ'g Co.*, 225 F.3d 1258, 1265 (11th Cir. 2000).  The Eleventh Circuit has generally noted that equitable tolling is appropriate when a movant's actions are untimely due to "extraordinary circumstances that are both beyond his control and unavoidable even with diligence."  *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).  Whether to toll a particular statutory period is determined on a case-by-case basis, depending on the equities of the situation. *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1485 (11th Cir. 1984). However, equitable tolling only applies "'when the defendant misleads [plaintiff] into allowing the statutory period to lapse, when [plaintiff] has no reasonable way of discovering the wrong perpetrated against [him], or when [plaintiff] files a technically defective pleading and in all other respects acts with the proper diligence which statues of limitations were intended to insure.'"  *Robinson v. Jojanns*, 147 F. App'x 922, 924 (11th Cir. 2005) (quoting *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993)).

Equitable tolling is not warranted here because plaintiff's contention that she only connected defendant to the surveillance in September 2008 is belied by the overwhelming record evidence to the contrary.  For example, in September 2006, the OWCP sent plaintiff a letter proposing to reduce her compensation for wage loss based on evidence that she was no longer totally disabled and that she had the capacity to earn wages as a registered nurse.  Doc. 41-2, at 20.  As a part of this proposal to reduce her compensation, the OWCP informed plaintiff:

> Your agency wrote to this office in a letter dated August 23, 2005, and provided specific documentation that you attended college on your own at Samford University. Their research revealed that while attending Samford University you earned a bachelor's degree in Nursing in August 2005.  The Alabama Board of Nursing confirmed your original nursing license date of July 27, 2004.

Doc. 41-5, at 11.  As is evident, the OWCP notified plaintiff in September 2006 that defendant had conducted research on her in August 2005 that revealed her enrollment at Samford University.  At that point, a reasonable person in plaintiff's position should have known that the surveillance she noticed in August 2005 was conducted by defendant, and thus the facts supporting a charge of discrimination or retaliation based on the surveillance should have become apparent.  It was then, in September 2006, if not before, that plaintiff should have contacted an EEO

50

counselor rather than waiting another two years.[20]  Moreover, the fact that plaintiff admits in her affidavit that one of the reasons she contacted a lawyer in September 2008 was the "constant surveillance," *see* doc. 43, plaintiff aff. ¶ 22, suggests that she not only had personal knowledge of the surveillance since August 2005 but also was suspicious about its purported discriminatory or retaliatory nature.  *See McClinton*, 743 F.2d at 1486 ("Once an employee suspects that he may have been discriminated against . . . and is also generally aware of his legal right to obtain redress for that wrong, he possesses sufficient knowledge to enable him to vindicate his rights, if he so desires.").

Plaintiff also appears to argue that the retaliatory harassment constitutes a continuing violation, as she states both in her complaint and response brief that the surveillance is ongoing.  As opposed to "the present consequence of a one time violation," a continuing violation is defined as "the continuation of the violation into the present" and thus extends the limitations period to assert the claim.  *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993).

---

[20]The court notes again that Plaintiff had filed EEO complaints and thus knew the filing deadlines.  *See Moore v. Potter*, 217 F. Supp. 2d 364, 374 (E.D.N.Y. 2002) (plaintiff's failure to exhaust administrative remedies held to be due to his own lack of due diligence and equitable tolling not applied in part because "based on the number of administrative complaints filed, the plaintiff was no stranger to the administrative process"); *Koch v. Donaldson*, 260 F. Supp. 2d 86, 92 (D.D.C. 2003) (plaintiff had constructive notice of the 30-day time limit for filing an appeal to the EEOC of the government agency's final decision because she had previously filed other timely appeals); *Jenkins v. Potter*, 271 F. Supp. 2d 557, 563-64 (S.D.N.Y. 2003) (same).

However, other than her conclusory allegation about the purported ongoing nature of the surveillance, plaintiff has presented no specifics and no proof that she witnessed any surveillance other than in August 2005.  *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) ("the critical question is whether any present violation exists").  Further, plaintiff's unsupported assertion is contradicted by the evidence contained in her workers' compensation files, including the private investigator's August 16, 2005 report stating that defendant conducted the surveillance on August 8-10, 2005.  Doc. 41-5 at 54; Doc. 41-6, 1-4.  This evidence indicates that defendant authorized the surveillance at a single point in time in order to confirm whether plaintiff was attending nursing school.  Moreover, the absence of any evidence in her files indicating that defendant performed subsequent surveillance investigations also suggests that it conducted none. Indeed, plaintiff's own statements confirm this, since she states only that she noticed someone conducting surveillance on her on August 8-10, 2005.  Doc. 23, complaint ¶ 51.  In short, the record simply does not support a continuing violation that would in any way toll the period within which to contact an EEO counselor.

Alternatively, even if plaintiff had timely exhausted her administrative remedies, her retaliatory harassment claim would still fail on the merits.  First, plaintiff cannot make out a *prima facie* case because she cannot show causation.

Although plaintiff bears the burden of showing that she has made out a prima facie case of retaliation, she makes no substantive arguments with regard to how the surveillance comprise a claim of retaliation. Rather, she states only in the statement of facts that she had a retaliation action pending against defendant in 1999, and that defendant was aware of it at the time of the 2005 surveillance. Doc. 42 ¶¶ 5, 25. This six year gap is too great to constitute circumstantial evidence of causation. *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *see also Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007) ("In the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."). Accordingly, plaintiff cannot establish a *prima facie* case since she failed to show a causal relationship between the surveillance in 2005 and her prior protected activity in 1999.

Second, even if she can somehow make out a *prima facie* case, there is simply nothing retaliatory about an employer conducting surveillance when it has credible reports of fraud. For over ten years, plaintiff missed work and collected disability benefits on the purported basis that she was unable to work because of a depressive condition. Yet throughout this period, she attended school, obtained an associate's degree, a bachelor's degree, received a license from the state to practice

nursing, and enrolled and ultimately received a masters in nursing.  To do all this, she obviously interacted with others, including working on joint projects and presentations, despite her contention that she could not work for defendant as a clerk because of her depression.  Incredibly, when defendant learned about her activities and naturally questioned whether she is engaging in fraud, she contends that the decision to conduct surveillance on her—which confirmed the reports defendant received—is harassment.  The court finds nothing in the law that prohibits an employer from investigating potential fraud simply because an employee is out on disability.  Indeed, to hold otherwise and find that surveillance activities automatically constitute retaliatory harassment, would handicap employers and disability carriers, encourage fraudulent claims, and put even more of a strain on a system already overburdened by fraud.  For all these reasons, summary judgment is due on plaintiff's harassment claim.

## VI.  CONCLUSION

Finding no material facts in dispute, the court hereby grants summary judgment in favor of defendant on all counts and dismisses this case with prejudice.

**DONE** this 31st day of August, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

54